[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present action arises out of an agreement under which the plaintiff was to construct a home on property owned by him and convey the property to the defendants. The contract contained provisions for changes in the required work which required a written change order and also contained allowances for various items. The plaintiff has instituted suit to recover the balance claimed to be owed to him and the defendants have counterclaimed asserting various deficiencies in the work performed.
The closing was scheduled for March 10, 1989 and, on March 5th, the parties met for the purpose of reviewing the executed change orders and the allowances. At that time, the plaintiff presented a balance due of $65,830.11. The defendant requested the plaintiff to provide backup material for the costs claimed to have been incurred and the parties agreed to meet prior to the closing to discuss the matter further. The defendant testified that they expected extras to be in the area of $25,000 to $35,000 and not the $65,830.11 as stated on the list provided by the plaintiff. The parties met prior to the closing and they agreed on a total price for the extras and allowances in the amount of $62,000 and the document was initialed by the parties evidencing that agreement. At the closing the plaintiffs paid the balance of the purchase price, as well as certain interest and carrying charges as agreed and an escrow agreement was executed covering items not yet completed. The defendants gave the plaintiff a bank check in the amount of CT Page 4205 $25,000 and a personal check in the amount of $37,000 in payment of the agreed upon $62,000 for extras and allowances. The $37,000 check was intentionally post-dated by the defendant and the post-dating was not noticed by the plaintiff at the closing. Thereafter, the defendant stopped payment on the personal check. At the time the defendant delivered the personal check to the plaintiff, the defendant had made a conscious decision that he would issue the personal check with the intention of stopping payment on it and, after the closing, the defendant did, in fact, issue a stop payment order.
The court finds that the payment of the $37,000 check represented the balance due based upon an agreed price for all extras and allowances under the contract and that a certificate of occupancy had been issued by appropriate authorities. The plaintiff is, therefore, entitled to receive that sum from the defendant with interest from March 10, 1989 pursuant to General Statutes 37-3a.
In their revised counterclaims, the defendants assert claims for damages with respect to numerous items, each of which is discussed individually.
The defendants claim that they permitted the plaintiff to utilize their plans for the structure which were not returned to them, and that the plans had a value of $5,000.00. The court finds that the only plans utilized by the plaintiff were returned by the plaintiff to the defendants and the court is unable to credit the testimony that other plans were utilized or that they had a value of $5,000.00.
The defendants also claim that the plaintiff wrongfully removed topsoil from the premises which had a value of $4,200.00. The court finds that there was excess topsoil on the property which could not reasonably be utilized on the property. The contractor who removed the topsoil advised the defendants that he was going to remove it and no objection was made by either of the defendants. Thereafter, the defendants made objection to the removal of the topsoil and the plaintiff immediately offered to return the topsoil to the defendants and made reasonable efforts to do so which the defendants refused to accept. Under such circumstances, the court finds that the defendants acquiesced in the removal of the topsoil and the court will not award damages for the removal of the topsoil. CT Page 4206
The counterclaim also asserts that the plaintiff did not complete the room above the garage. The parties discussed the completion of a wall in the studio for which the plaintiff was to receive, in exchange for such work, airline tickets to Norway for the plaintiff and his family. A notation of that agreement was made and signed by the respective parties. Thereafter, the defendants advised the plaintiff that they had contracted to have studio room finished by someone else and that they would submit the appropriate invoice to the plaintiff. However, the plaintiff never performed the work on the room above the garage, nor did he receive the airline tickets for himself and his family. Under such circumstances the defendants have no claim against the plaintiff for failing to complete the work in question.
The defendants also claim that the plaintiff failed to complete the outside lighting fixtures and to install the same. The defendants claim that the plaintiff failed to install the lighting fixtures and therefore is responsible for the cost thereof. Lighting fixtures were referred to in a change order in which the plaintiff agreed to install underground wires for future light locations. The court finds that the plaintiff completed the required work and that there was no agreement that the plaintiff should provide lighting fixtures as claimed by the defendants.
The defendants also submitted some evidence with respect to the door bell chimes. The chimes were ordered by the defendants and installed by the plaintiff, and the court finds that there is insufficient evidence upon which to base a justifiable claim by the defendants with respect to that item.
The defendants claim that the front sidewalk was completed by the plaintiff and that the defendants were required to install a front sidewalk at a cost of $8,000.00. At the closing, an escrow agreement was executed in the amount of $13,500 covering various items which, for the most part, were performed by the plaintiff. However, the defendant advised the plaintiff that they did not wish him to install the front sidewalk, but rather wanted another contractor to perform the work. The escrow agreement contained a provision of withholding the sum of $1,500.00 to cover the cost of the front walk. After being advised by the defendant that someone else would perform the work, the plaintiff returned the sum of $948.00 to the defendants representing the cost to install the flagstone walk and the plaintiff claims that the balance between $948.00 and $1,500.00 represented excessive withholding as an incentive to perform the work involved. The court finds that the CT Page 4207 sidewalk actually installed by the defendants exceeded the work required to be done by the plaintiff under the agreement and, accordingly, the plaintiff is not responsible for the $8,000.00 claimed to have been expended by the defendants. However, the court does find that the $1,500.00 escrow amount should have been delivered to the defendants and therefore finds that the defendants are entitled to receive, from the plaintiff, the sum of $552.00.
The defendants also claim the rear deck was supported by concrete block in violation of the applicable code. However, the court accepts the testimony of the witnesses produced by the plaintiff and finds that the code does not require a poured concrete footing and that the utilization of concrete block in the manner in which it was installed constitutes compliance with the applicable building code and that the plaintiff's work was not in violation of that section.
The defendants also claim that the footings were not installed to the depth of 42 inches below grade as required by the applicable codes. The witness produced by the plaintiff testified that he put his hand underneath one of the piers and did not feel anything and, therefore, concluded that the particular pier and all other piers did not comply with the 42" requirement. No further excavation was conducted on behalf of the defendants. However, the plaintiff produced testimony of witnesses who testified that they performed the excavation and backfilling for the footings and determined that the footings did in fact go down 42 inches as required by the code. Accordingly, the court accepts the testimony provided by the witnesses for the plaintiff and finds that the footings are not in violation of the applicable code with respect to their depth.
The defendants also claim that the deck failed to comply with code requirements and that the railings were not installed were required and that the space between the risers and the railings was in excess of code requirement. Where there is a conflict of testimony on this issue, the court finds that the deck as constructed complied with code requirements.
The defendants also claim that the siding was put on improperly. The siding on the house was cedar which comes from the mill with a smooth and a rough side. The court accepts the testimony of the plaintiff's witnesses that the proper and appropriate manner of applying the cedar is with the rough side out. The plaintiff also claims that the siding should have been white cedar and not the red cedar as actually used. The agreement CT Page 4208 between the parties provided that the exterior siding was to "be white cedar if available, at same cost." The testimony indicated that white cedar was not available at the same cost and that white cedar was available in the market, at that time, only on a limited basis. Accordingly, the court finds that the plaintiff was not in violation of the contract in utilizing red cedar as opposed to white cedar.
The defendants also claim that the well did not conform with the provision of the applicable code which required that the "annualar space shall be grout filled from the frost level to the bottom of the casing. The plaintiff's witnesses testified that a drive shoe was utilized and when such device is used, it is not necessary to grout the casing unless there was a space to be grouted. The witnesses further testified in the present case that there was no need for grouting because there was no annualar space to be grouted. The witnesses also testified that the well completion report provides yes or no answers as to whether drive shoe was utilized and whether or not grouting was performed. Accordingly, the defendants witnesses testified that the well as constructed complied with the applicable code. The court finds that the well as constructed did comply with those requirements. The defendants also assert that the well did not produce the quantity of water required. The plaintiff's witnesses testified that at the time the job was completed, the well did produce the necessary quantities of water. A witness for the defendants testified that he had inspected the well quite some time after its installation (after the warranty period) and the well was not producing a sufficient quantity of water. The well was then hydro fracked to restore the quantity of water needed. The plaintiff's witnesses also testified that after they left the job, there were no complaints made about the water production from the well. They also testified that test reports indicated a high mineral content of iron which could have sealed the seams from which the water flowed and it might have caused the well to restrict its production. Based on the testimony, the court cannot find that any lack of water production was attributable to the fault of the plaintiff.
The defendants also claim that a stairway was needed, near the exit from the double french doors, which were not installed by the plaintiff. The defendant wanted the deck to be extended over to the exit way from the french doors and the defendants wanted another contractor to do the work and $2,500.00 was deleted from the escrow agreement for that item. Accordingly, the court does CT Page 4209 not award funds to the defendant for such claims.
The defendants also claim that the house was painted improperly. According to the evidence, the court finds that the house was painted in a proper and customary manner and that the defendants are not entitled to damages for that claim.
The defendants also claim that there is nail popping in certain parts of the house. The court finds from the evidence that the construction of the ceiling was done in an appropriate manner and that the popping was either caused by shrinkage which is excluded from the guarantee under the contract or excessive use of the upstairs floors. Accordingly, the court does not award damages for that item.
The agreement between the parties provided an allowance in the amount of $9,500.00 for a septic system. However, the extras contained the sum of $8,251.00 over and above the cost of the allowance of the septic system. The defendants claim that they should not be responsible for payment of the $8,251.00. The evidence establishes that in October of 1988, the plaintiff advised the defendants that the septic system costs were higher than the allowance. The defendants claim that they did not know the size of that amount until the March 5th meeting when they met with the plaintiff to discuss the extras. However, the court finds that the cost incurred for the septic system are proper and appropriate. While the court might believe it would be appropriate for the plaintiff to have informed the defendants of the amount of the overage or, for the defendant to have inquired as to the amount of the overage, the court declines to award any damages to the defendant as a result of that claim.
There are numerous other claims made by the plaintiff in the revised counterclaim upon which either no evidence was offered, or, insufficient evidence was offered to enable the defendants to sustain their burden of proof.
Accordingly, the court enters judgment for the plaintiff in the amount of $37,000.00 plus interest at the rate of 10% from March 10, 1989 to the date hereof in the amount of $15,303.45; the court also awards judgment to the defendants and their counterclaim in the amount of $552 without interest.
RUSH, J. CT Page 4210